UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:22CR0449 SRC SPM |
| ROBERT MERKLE, | ) ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Robert Merkle ("Merkle"), represented by defense counsel Kevin Gau, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to all 5 counts in the Indictment:

A.  The parties agree that Defendant be sentenced to **60 months in prison** on all counts to be run concurrently. The guideline range (combination of Total Offense Level and Criminal History Category) *shall* ~~ultimately~~ determined by the Court pursuant to any chapter of the [RM KBG] Guidelines and Title 18, United States Code, Section 3553(a); and

1

B.   The United States agrees that no further federal prosecution will be brought in this District relative to the defendant's conduct from May 2021 through the date of the plea relative to the indictment, of which the Government is aware at this time.

C.   The Court is neither a party nor bound by this agreement.

D.   The parties recommend that the sentence in this case be run concurrently to any sentence the defendant receives in his St. Louis County Case 22SL-CR00573-01.

**3. ELEMENTS:**

As to Counts I, and II, of the Indictment, the defendant admits to knowingly violating Title 18, United States Code, Section 875(c), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

A. The defendant knowingly sent a message in interstate commerce;

B. Containing a true threat to injure the person of another;

C. The defendant sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.

As to Counts III, IV, V of the Indictment, the defendant admits to knowingly violating Title 18, United States Code, Section 2261A(2)(B), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

A.   The defendant used an electronic communication service or any other facility of interstate or foreign commerce;

B.   The defendant used the electronic communication service or any other facility of interstate or foreign commerce to engage in a course of conduct;

      C.      While engaged in that course of conduct, the defendant intended to injure, harass, or intimidate another person; and

      D.      The defendant's acts constituting the course of conduct caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In January of 2022, law enforcement were notified that defendant Merkle was harassing a female. Further, a subsequent review of the defendant's cell phone revealed that he had been harassing numerous women since May of 2021.

As to Count One: Victim "T.B.", Charge Section 875(c):

On January 26, 2022, the Town and Country Police Department responded to an address in their venue and interviewed a woman identified as "T.B."

T.B. reported she met the defendant (Robert Merkle) in April 2014. T.B. reported she met the defendant on a dating website and they had dated briefly before she ended the relationship.

T.B. told investigators that during intermittent periods from 2014 through January 2022, T.B. continued to receive text messages from the defendant which were annoying, but she did not consider them threatening. T.B. told investigators she ignored the text messages and did not respond to him.

T.B. told investigators that during the evening of January 26, 2022, she received a text message string from Merkle, who she believed was using a fictitious or internet-generated telephone number. T.B. told investigators that although the defendant was using an unfamiliar

3

telephone number, she knew it to be him because he referenced a nickname only he used, he described a specific attribute of her home, and he said they had sex during April 2014.

A transcript of the text messages investigators believe were sent by Merkle is included below. T.B. told investigators she did not reply to the text messages.

- Hey Tamster?
- Remember the last night we had sex in late April 2014?
- I photographed your house key before we left your place that evening
- See there was this online company that made a physical copy of a key purely from a cellphone picture.
- Cool, ya know?
- I remember you looked at your keys on your breakfast bar table. You saw they had been moved and for a second I thought you were gonna sniff me out. But you never made the connection
- I got the key to your front door not but 5 fuckin days later
- And it worked, too [face emoji]
- I still have it and I bet the lock is still the same
- I'm gonna find out for sure this Friday nite, Tamster.
- So if you happen to wake up Friday nite around midnight w a hand over your mouth and a dick going in and out of your cunt, well, at least you'll know who it is
- Just like old times Tammy....just like old times

After the police arrived at the residence of T.B., she received a text message from who she believed was Merkle. A portion of the message is included below:

- And for Christ's sakes, Tammy, quit calling the fuckin cops on me. Now I'm gonna have to call in another favor w/ my...ummmm..."F"lowers "B"y "I"rene buddies to quash this shit
- Damnit woman!

Investigators asked T.B. if the key to her home had numbers at the top of it which correspond to the key cutting depths to make a new key. T.B. told investigators the key to her home has numbers on it similar to what Merkle described.

Search Warrant:

4

Based on T.B.'s statements, FBI Special Agent Ryan Cornelius (SA Cornelius) applied for and received federal search warrants to search Merkle's home[1] and cell phone. On January 27, 2022, FBI responded to Merkle's place of employment and arrested him. SA Cornelius observed that Merkle's did not have his Apple Iphone on him on the way to the police station. Investigators discovered that the defendant gave it to a co-worker. It is retrieved by law enforcement. The defendant invoked *Miranda* and did not make any incriminating statements. Besides the Federal Search Warrants obtained for his home and the defendant's cell phone, another search federal search warrant was also served upon the defendant's email account, "robertscottmason2022@gmail.com." Computer devices and cell phones were seized from the defendant's home/room.

Computer Forensics:

FBI Special Agent David Howe, who is an experienced forensic analyst, reviewed the computer devices seized from Merkle's apartment which included: two older computers, 4 cell phones, 3 SIM cards, 7 USB devices, and a media player. One computer (labeled by the FBI as item "1B3") and one older Android-based phone (Item "1B5") had the Gmail address of robertscottmason2022@gmail.com linked to them. Another Android-based cell phone (item "1B6") contained: links to the robertscottmason2022@gmail.com account, and had a text from "Textme[2]" showing the defendant was using Textme services. A third cell phone (Item "1B8") also has the robertscottmason2022@gmail.com email address associate with it, and there were

---

[1] The defendant's home at the time was just a room at a halfway house called "Father Dempsey's."
[2] Textme is an application for your cell phone that offers free texts, messages and calls to anyone in the world. The service costs nothing because it is supported by advertising. A user can use a fake name to sign up for Textme making it near impossible for a normal user to track who is texting them. Law enforcement, using legal process, can request Textme for data associated with the subscriber.

violent text messages located on that phone to Victim Three, "C.E.," from a Textme account under the name of "tammybell."

Relevant to the allegations made by victim T.B., law enforcement located messages sent to her from the defendant on one of his cell phones (item 1B5). Included in the located text messages was the threatening message the defendant sent about raping her on Friday night. Law enforcement was able to access the data on Merkle's Apple Iphone in the Fall of 2022. Evidence of emails and text messages to the victims were located on that cell phone as well. Including an email to victim T.B. dated January 12, 2022 from "robertscottmason2022@gmail.com."

As to Count Two: Victim "M.O.," Charge Section 875(c):

An adult female victim, M.O. residing in Glen Ellyn, Illinois, reported to police that on January 24, 2022, she received text messages from the phone numbers: 571-932-8165 and 314-766-1091. They used her nickname "Mxxx." One of the texts from phone number 571-932-8165, that was *also* located on one of the defendant's Android based cell phones (item 1B5) was: "I'd love to know your address. I like to masturbate and think about coming to your house some night really late, breaking in, mounting you with no grace at all and having really hard sex with you."

The second phone number 314-766-1091, police tracked to being assigned to the defendant based on T-Mobile records. Also there are Gmail emails from "Robert Scott Mason" to this victim through the online dating application "Ok Cupid." These messages caused M.O concern and she had reported them to her local police department because she was frightened.

Located on the defendant's Apple Iphone was a text message from "robertscottmason20297632" to M.O. that was identical to the one mentioned above and was

6

found in the phone. (I'd love to know your address. I like to masturbate and think about coming to your house some night really late, breaking in, mounting you with no grace at all and having really hard sex with you.)

As to Count Three: Victim "C.E.," Charge Section 2261A:

    C.E. resides in California and received threatening text messages from the defendant in October of 2021. These messages were located by the FBI on the defendant's Android Phone (Item 1B8).

    C.E. told the FBI that she recalled receiving the text messages in October of 2021 on her personal cell phone from a number she did not recognize. SA Cornelius read the victim a string of text messages from Merkle's phone (1B8) which she stated she recalled. She blocked the number after that because she found the messages threatening. The messages said, "Cxxxxxx" "this is an old friend," "have you ever been sexually assaulted," "I am thinking about breaking into your house and fucking your fucking brains out." The messages appeared to have come from an account with the name, "tammybell4920." These text messages to C.E. were located on the defendant's phone and were dated that they were sent on October 11, 2021. On October 13, 2021, the defendant sent two text messages from "tammybell" account, that read: "have you ever been fucked against your will?" "I am thinking about breaking into your house and fucking your brains out." Victim C.E. received another message from the defendant on October 26, 2021. It read: "Cxxxxxx, I would like to fuck your brains out until they leak out of your fucking ears." C.E blocked the number and the messages stopped.

As to Count Four: Victim "L.K.," Charge 2261(A):

    L.K. is an adult female that resides in Saucier, Mississippi. She received repeated phone calls and text messages from an unknown individual from June 2021, until January 2022. She

reported these threatening messages to both the Harrison County Sheriff's Department and the Gulfport Police. The defendant's Android phone (item 1B5) contained evidence that the defendant was the person cyberstalking L.K. L.K. sent screenshots of the threatening messages on her phone to SA Cornelius:

- Robertscottmason20297632 sent to her on DATE:
    - Robertscottmason20297632 (Merkle's phone): L*****
    - L.K.: ?
    - Robertscottmason20297632: Youre very beautiful
    - L.K.: Who is this
    - Robertscottmason20297632: L**** I would love to know your address, I masturbate and think about coming to your house some night really late, getting in, mounting you with no grace at all, and just start having really hard sex Id love to know your address. I like to masturbate and think about coming to your house some night really late …
    - Robertscottmason20297632: But what I would really like to do is spray semen all over your face while you're having an orgasm.
    - Defendant sent a photograph of L.K. (from the internet) to her.
    - L.K. asked him for his name.
    - Robertscottmason20297632 responded: L**** you motherfucker I really need to get on top of you and piston my penis in and out of your goddamn cunt.

These text messages were located on both the defendant's android cell phone (1B5) and on his Apple Iphone by the FBI. Besides the above saved messages to L.K., the defendant also called her and sent her repeated texts. These messages frightened L.K. and she had reported them to local law enforcement due to her fears.

As to Count Five: Victim "J.A.," Charge 2261A

J.A. resides in Edwardsville, Illinois. In December 26, 2021, J.A. received an email from the email account of robertscottmason2022@gmail.com. This email account belonged to the defendant. J.A. was asked if she had worked at Wells Fargo in 2014. She then received emails on January 5, 2022, through January 17, 2021, that were sexual and threatening in nature from the defendant's email account. Including: "Jxxxx I'd love to know your address. I like to

8

masturbate and think about coming to your house sone night really late, getting in, mounting you with no grace at all and just start having really hard sex with you." Then on January 5, 2022, the defendant through the robertscottmason2022@gmail.com email account wrote the following: "Yeah. So anyway I remember you as being *insanely* smoking hot. Smoldering hot. In fact the first week or two after we started I recall you were wearing a micro (emphasis on micro) miniskirt, jacket, heels and tights. Don't think I'll ever forget that, Jxxxxx I thought: this girl must f*ck like a g*ddamn Ferrari…. And I'm prolly not wrong in that analysis, wouldn't you concur?" On January 17, 2022, the defendant emailed J.A. the following: "Jxxxxx what I'd really like to do is spray semen all over your face while you're having an orgasm."

The threatening emails caused J.A. fear and alarm.

Also, located within the defendant's computer devices and cell phones was evidence that the defendant had emailed or sent text messages to several other women around the country. Similar to the aforementioned victims, the defendant threatens to rape these women.

Defendant received three (3) years in state prison in 2018 for similar crimes with different victims.

Lastly, the defendant used the Internet to engage in this course of conduct. The Internet is a facility of interstate or foreign commerce. Defendant intended to engage in this course of conduct and he did so utilizing an electronic communication service.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 5 years, a

9

fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

The counts can be run consecutively or concurrently.

6. **U.S. SENTENCING GUIDELINES (2021 MANUAL):**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

a. **Chapter 2 Offense Conduct:**

(1) **Count One: Interstate Threat**

  a. **Base Offense Level:** The parties agree that the base offense level is **12**, as found in Section 2A6.1.

  b. **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristic applies: **none apply.**

(2) **Count Two: Interstate Threat**

  a. **Base Offense Level:** The parties agree that the base offense level is **12**, as found in Section 2A6.1.

  b. **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristic applies: **none apply.**

(3) **Count Three: Cyberstalking.**

  a. **Base Offense Level:** The parties agree that the base offense level is **18**, as found in Section 2A6.2(a).

    b.    **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristic applies: **none apply**.

  **(4)**    **Count Four: Cyberstalking.**

    b.    **Base Offense Level:** The parties agree that the base offense level is **18**, as found in Section 2A6.2(a).

    b.    **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristic applies: **2** levels should be applied pursuant to § 2A6.2(b)(1)(E), because the offense involved "a pattern or activity involving stalking, threatening, harassing, or assaulting the same victim."

  **(5)**    **Count Five: Cyberstalking.**

    a.    **Base Offense Level:** The parties agree that the base offense level is **18**, as found in Section 2A6.2(a).

    b.    **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristic applies: **none apply.**

**b. Chapter 3 Adjustments:**

  **(1) Acceptance of Responsibility:** The parties agree that **3** levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said

11

evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

    b. **Chapter 3 Adjustments**: none apply.

    (2) **Other Adjustments**: Chapter Two, Part A counts are grouped pursuant to Section 3D1.2(d) and the offense guideline applicable to the aggregate behavior is used. Under Section 3D1.4, **4 units** are added to the highest offense level – which is Count 4, Offense **Level 20** since the remaining counts are either 1 to 4 levels less serious (Counts 3 and 4) or 5 to 8 levels less serious (Counts 1 and 2). That leads to a total offense **level 21** after acceptance is accounted for in chapter 3.

c. **Other Adjustment(s)/Disputed Adjustments**: None.

d. **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is **21**.

e. **Criminal History**: The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

f. **Effect of Parties' U.S. Sentencing Guidelines Analysis**: The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

   **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

   **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

   **(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

   **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

   **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records

13

pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

    **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $500, which the defendant agrees to pay at the time of sentencing. Money paid by the

14

defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

### 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

### 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position

supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

3.16.23
Date

COLLEEN LANG
Assistant United States Attorney

03-14-2023
Date

ROBERT MERKLE
Defendant

3/14/2023
Date

KEVIN GAU
Attorney for Defendant

18